# IN THE COURT OF APPEALS 06/18/96

# OF THE

# STATE OF MISSISSIPPI

## NO. 93-KA-00331 COA

**AARON LYNCH**

**APPELLANT**

**v.**

**STATE OF MISSISSIPPI**

**APPELLEE**

THIS OPINION IS NOT DESIGNATED FOR PUBLICATION AND

MAY NOT BE CITED, PURSUANT TO M.R.A.P. 35-B

TRIAL JUDGE: HON. ELZY J. SMITH

COURT FROM WHICH APPEALED: COAHOMA COUNTY CIRCUIT COURT

ATTORNEY FOR APPELLANT:

RICHARD B. LEWIS

ATTORNEY FOR APPELLEE:

OFFICE OF THE ATTORNEY GENERAL

BY: PAT FLYNN

DISTRICT ATTORNEY: LAURENCE Y. MELLEN

NATURE OF THE CASE: CRIMINAL MURDER

TRIAL COURT DISPOSITION: CONVICTED OF MURDER AND SENTENCED TO LIFE
IMPRISONMENT IN THE MISSISSIPPI DEPARTMENT OF CORRECTIONS

BEFORE BRIDGES, P.J., COLEMAN, AND PAYNE, JJ.

BRIDGES, P.J., FOR THE COURT:

Aaron Lynch was convicted by a Coahoma County jury of murder and sentenced to life imprisonment in the Mississippi Department of Corrections. On appeal, Lynch contends that the verdict of the jury was against the overwhelming weight of the evidence. Finding no error in the lower court we affirm Lynch's conviction and sentence.

## FACTS

Cassandra Faye Bays was shot to death on the night of October 3, 1992. She was found lying face down on her bed, in her bedroom, with five gunshot wounds, three to the head, one to the cheek and one to the hand. After interviewing several witnesses, Aaron Lynch, Bays' boyfriend and father of two of her children, was arrested.

At trial, the evidence showed that the incident began when Lynch called Bays to tell her that he was bringing their three year old son, Jerome, home. He had taken the child earlier to buy some candy and soda. During the conversation, Bays told Lynch to keep the boy a while longer. Lynch, suspicious that another man was with Bays, went to her house. He was driven by Lennon Sims.

When Lynch, Sims, and the boy arrived, Sims waited in the car outside and Lynch and the child went inside. They entered the living room where Jonathan Bays, eight, and Erica Bays, six, were watching television. Lynch asked Bays for some bullets for his gun. Bays responded negatively and Lynch hit her in the face and drug her to the bedroom. Once in the bedroom, there were no eyewitnesses. The children testified that they heard an argument between Bays and Lynch followed by five gunshots. Both children testified that there were no other adults in the house at this time.

After the shots were heard, Jonathan Bays testified that he saw Lynch exit the house, through the front door, carrying a gun. Jonathan was coming out of the bathroom, where he had been hiding during the argument and gunshots.

Lynch claims that the reason he came into the house asking for the bullets was to protect himself against Bays' new boyfriend, who he claims was "supposed to kill" him. After she refused, he slapped her, and they went to the bedroom. He testified that he and Bays were "kissing and stuff" in the bedroom when "all of a sudden somebody come out of the back" and began shooting at them. He pushed the intruder out of the way, ran out of the house, got into Sims' car and drove off. At trial Lynch testified that he told Sims that someone was shooting at him. Contrary to this testimony, Sims claims that Lynch did not say anything about someone shooting at him when he came back to the car.

After leaving the house, Sims and Lynch drove to Espy Street where Lynch told Sims to stop. Lynch then ejected six empty shells from his gun and reloaded. Sims later took Officer Hill to the area where the gun was unloaded, and six empty hulls were retrieved.

During the trial, three relatives of the Defendant, his sister, niece and nephew, testified that Jonathan had told them someone had paid him three dollars to say Lynch was the one who shot Bays.

## DISCUSSION OF THE LAW

WHETHER THE VERDICT WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.

On appeal, Lynch argues that the verdict was against the substantial weight of the evidence. The Appellant asks that the jury's guilty verdict be vacated and a new trial be ordered. This motion for a new trial challenges the weight of the evidence. Courts will reverse the denial of a motion for a new trial only where the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would be allowing an unconscionable injustice. *Hall v. State,* 644 So. 2d 1223, 1228 (Miss. 1994) (citing *Guilbeau v. State,* 502 So. 2d 639, 641 (Miss. 1987)). In reviewing this motion for a new trial, the court must accept all evidence put on by the prosecution as true, together with any reasonable inferences that may be drawn from the evidence. If there is sufficient evidence to support a verdict of guilty, the court must overrule the motion for a new trial. *Roberson v. State,* 595 So. 2d 1310, 1320 (Miss. 1992).

Moreover, it is well settled that matters regarding the weight and credibility of the evidence are to be resolved by the jury. *McClain v. State,* 625 So. 2d 774, 778 (Miss. 1993). The jury, and not the reviewing court, hold the responsibility to pass upon the credibility of witnesses, and where the evidence justifies the verdict, it must be accepted. *Burrell v. State*, 613 So. 2d 1186, 1192 (Miss. 1993).

In the case at hand, the jury convicted Aaron Lynch of murder. This conviction was based on a belief, beyond a reasonable doubt, that Lynch had shot and murdered his girlfriend, Cassandra Bays. A court is authorized to reverse such a decision only where the evidence considered is such that reasonable and fair-minded jurors could only find the accused not guilty. *McClain,* 625 So. 2d at 778. In this instance, the reasonable and fair-minded jurors found Aaron Lynch guilty.

In deciding the question of whether Jonathan Bays lied about who shot his mother for the payment of three dollars, the jury decided either not to believe this testimony or to give it very little weight. In deciding who to believe, the jury was entitled to take into consideration the motives and interests of the testifying witnesses. *Burrell,* 613 So. 2d at 1192. Here, the jury was able to view the demeanor and weigh the credibility of Jonathan's statement that Lynch had shot his mother. The jury chose to believe the testimony of the State's witness over that of Lynch. They weighed the evidence and convicted Lynch of murder.

Accordingly, we find the verdict was not against the overwhelming weight of the evidence and we affirm the judgment and sentence of the lower court.

**THE JUDGMENT OF THE COAHOMA COUNTY CIRCUIT COURT OF CONVICTION OF MURDER AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. COAHOMA COUNTY IS TAXED WITH ALL COSTS OF THIS APPEAL.**

**FRAISER, C.J., THOMAS, P.J., BARBER, COLEMAN, DIAZ, KING, McMILLIN, PAYNE,**

**AND SOUTHWICK, JJ., CONCUR.**